IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Khalda Bibi, : 
     Petitioner :
 :
    v. : No. 1157 C.D. 2024
 : Submitted: June 3, 2025
Ross Dress For Less, Inc. :
(Workers' Compensation Appeal :
Board), :
     Respondent :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
             HONORABLE MICHAEL H. WOJCIK, Judge (P.)
             HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT          FILED:  July 16, 2025

Khalda Bibi (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that granted, for a closed period, Claimant's petition for disability compensation benefits. In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ). On appeal, Claimant argues that the Board erred because the WCJ's findings of fact are not supported by substantial evidence, and the WCJ's decision is not reasoned. For the reasons that follow, we affirm the Board's adjudication.

**Background**

On December 13, 2022, Claimant filed a claim petition asserting that she was injured in the course of her employment as a packer with Ross Dress For Less, Inc. (Employer), while carrying heavy boxes. Specifically, the claim petition alleged that Claimant sustained a right knee contusion and an L5-S1 disc bulge that

caused lumbar radiculopathy. She sought total disability benefits from August 31, 2022, and ongoing.

Before the WCJ, Claimant testified that approximately three weeks after starting her job, on August 31, 2022, she fell backwards onto her "back and both shoulders." Notes of Testimony (N.T.), 3/1/2023, at 18. Claimant was taken to the hospital by ambulance and was discharged several hours later. Claimant was then treated at Concentra and the Orthopedic Institute of Pennsylvania (Orthopedic Institute). Currently, she treats with her family physician, who prescribes medication for her pain. Claimant testified that her work injury continues to cause serious pain in her lower back. As a result, she is unable to do her pre-injury job and has not worked since her injury occurred.

Claimant offered the deposition testimony of Ronald W. Lippe, M.D., a board-certified orthopedic surgeon on staff with the Orthopedic Institute. Dr. Lippe testified about his visit with Claimant on January 6, 2023, in relevant part, as follows:

> [Dr. Lippe:] [S]he had back pain that started at the end of August of the preceding year. The pain was in her low back and radiated to the right side, that it was worse with sitting and walking.
>
> [Attorney:] And at that point, Doctor, was she only complaining of low back pain to you?
>
> [Dr. Lippe:] That is the only thing that we discussed at my appointment.

Lippe Dep. at 7-8. He performed a physical examination. It revealed that the Claimant's back range of motion "was slightly decreased," but she had normal motor function and sensation. *Id*. at 8. Dr. Lippe recommended physical therapy for Claimant.

As for work restrictions, Dr. Lippe testified that Claimant "could not go back to work" as of January 6, 2023, because of her continued pain. Lippe Dep. at

2

10. Dr. Lippe diagnosed Claimant's work injury as "mechanical low back pain and degenerative disc disease in her lumbar spine." *Id*. at 11. He based this opinion on Claimant's history and the fact that she did not have any symptoms prior to her work injury. Dr. Lippe explained that Claimant's degenerative disc disease will slowly progress throughout her life, but those symptoms are now secondary to the work injury.

Dr. Lippe was questioned about the medical records from the Orthopedic Institute. He stated that the records showed that Claimant was "feeling better" as of October 20, 2022. Lippe Dep. At 17. The records then stated that Claimant could "return to full duty on November 21[], 2022[.]" *Id*. at 18-19.

On cross-examination, Dr. Lippe acknowledged that Claimant's complaints were subjective in nature and not supported by objective data. Dr. Lippe also acknowledged that in response to palpation of her spine, Claimant "reacted very strongly, more than one would expect from just simple mechanical back pain," which he could not explain. Lippe Dep. at 15.

In response, Employer offered the deposition testimony of S. Ross Noble, M.D., board-certified in physical medicine and rehabilitation and electrodiagnostic medicine. Dr. Noble did an independent medical examination (IME) of Claimant on April 4, 2023. He testified that Claimant reported that the injury occurred when three heavy boxes fell, "which knocked her backwards, and caused her to hit the floor with her right side causing pain in her neck, right shoulder, right side of her back, and right knee." Noble Dep. at 8-9. Claimant told him that she has had no improvement, notwithstanding her treatment. Dr. Noble testified that Claimant presented with the following complaints during the IME:

> [Dr. Noble:] She told me that she had excruciating pain in the front of both shoulders, the low back, and both knees. She also

3

had a sensation that her veins and arteries are being stretched while walking and her pain is worse with sitting, standing, walking, and laying, which doesn't leave anything else that might relieve the pain.

[Attorney:] How did that affect her activities of daily living according to what she told you at that time?

[Dr. Noble:] That she had too much pain to eat and too much time to sleep and that she couldn't return to work or do stuff in the community.

Noble Dep. at 9-10.

Dr. Noble reviewed Claimant's medical records. The hospital records reported Claimant's fall at work caused her to sustain contusions, without injury to her bones or muscles. Notably, the hospital did scans of Claimant's chest, abdomen, pelvis, neck and right knee. Pre-injury medical records showed that in 2020, Claimant suffered arthritis in her right knee and, in 2022, reported leg cramps, muscle pain, swelling, and tenderness.

Dr. Noble's physical examination of Claimant found a normal walking pattern as well as normal internal and external rotation, including in her shoulders. Dr. Noble found no impingement and no focal anatomic tenderness. There were no objective findings of muscle atrophy, abnormal muscle tone, circulatory issues, temperature issues, or structural issues of the upper extremities. He found Claimant's lumbar spine had a 50 percent of normal range of motion, which is expected for a sedentary, nonactive individual. With that range of motion, Claimant could tie her shoes, put on clothes, drive a car, and go up and down steps. Dr. Noble's neurologic examination showed Claimant to be normal with respect to touch, temperature, vibration, sensation, reflexes, and muscle strength. He noted arthritic tenderness in her right knee.

4

Dr. Noble summarized Claimant's physical condition as consistent with her age, with some arthritis in her right knee. He did not identify any objective findings to support her symptoms. "Everything was subjective." Noble Dep. at 15. He opined that Claimant had recovered from the work-related contusions to her back, neck, right knee, and right shoulder. Dr. Noble noted that at her visit to the Orthopedic Institute on October 20, 2022, Claimant was found to be improving. The back muscle spasms found on the previous examination had completely resolved. He believed that it would have been reasonable for Claimant to be out of work "up to four days" to recover from her contusions. After four days, she should have been able to return to full-duty work, with restrictions.

### WCJ Decision

In his decision dated September 22, 2023, the WCJ credited Claimant's testimony about the event on August 31, 2022, but did not credit her testimony that she was unable to work. The WCJ explained:

> Particularly striking to this Judge was the absence in evidence of the hospital record where Claimant sought treatment the day after the incident. Although there is reference to the same in the report of Dr. Noble, his summary of this record makes no mention of restrictions or an inability to work. Likewise, this Judge weighed the fact that even Claimant acknowledged that one of the initial providers where she sought treatment, *i.e.*, Concentra, had released her to return to work, without restrictions. . . . This Judge cannot reconcile the foregoing with the assertion that Claimant maintains that she is completely and utterly disabled and on occasions utilizes a wheelchair. When following the timeline of this dispute, other than Claimant's self-serving assertion that she cannot work, *there was no reference by her medical expert, Dr. Lippe, that any provider had taken her out of work between August 31, 202*[2]*, and the time he evaluated Claimant on January 6, 2023*. Although Claimant may argue that Dr. Lippe supports the claim for disability as of the foregoing date, this Judge does not find that argument to be particularly

5

credible, or persuasive, in this dispute. When Claimant presented to Dr. Lippe, he acknowledged that the complaints of Claimant were subjective in nature and that there was no objective data. In addition, *Claimant's medical expert conceded that others in his practice had released Claimant to return to work*. The presentation of Claimant before this Judge was completely and diametrically opposite of this.

Finally, another factor that this Judge weighed when not finding Claimant credible is the fact that her own medical expert testified that when he examined Claimant, she was "exquisitely tender out of proportion to palpation in her lumbar spine." . . . The doctor testified that when he would just touch Claimant's back, she reacted strongly, i.e., more than one would expect from just simple mechanical back pain. . . . The foregoing, together with the fact that the doctor, as an experienced orthopedic surgeon, simply did not have any explanation as to why Claimant reacted that way undermines the overall credibility of the doctor in this dispute. . . .

WCJ Decision at 10-11, Finding of Fact No. 7(a) (emphasis added).

The WCJ found the testimony of Dr. Lippe less credible than that of Dr. Noble. Dr. Lippe did not evaluate Claimant until January 6, 2023, at which time he found Claimant's complaints to be subjective. Further, Dr. Lippe "did not point to any prior provider who had disabled Claimant, i.e., taken her off work." WCJ Decision at 11, Finding of Fact No. 7(b). Finally, Dr. Lippe could not explain Claimant's strong reactions to her mechanical back problems.

The WCJ found the testimony and opinion of Dr. Noble competent and credible, explaining that his opinion was consistent with Claimant's medical records and his findings at her physical examination. The WCJ accepted Dr. Noble's opinion that Claimant's work-related contusions were disabling for four days.

Based upon these findings, the WCJ concluded that Claimant was fully recovered from the August 31, 2022, work injury. The WCJ awarded Claimant

6

medical benefits from August 31, 2022, through April 4, 2023. The WCJ did not award disability compensation because her injury did not cause her to be off work in excess of seven days, the minimum necessary to be eligible for disability benefits. *See* Section 306(a) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §511 (compensation for total disability begins after the seventh day of total disability).

## Board Adjudication

Before the Board, Claimant argued that there were errors in the WCJ's summary of Dr. Lippe's testimony. Specifically, Dr. Lippe did not testify that no provider had taken Claimant off work, as found by the WCJ. This error undermined the WCJ's credibility determination and rendered his decision not a reasoned one.

The Board rejected this argument. It noted that "Claimant does not dispute the determination to limit the work injury description to contusions." Board Adjudication at 5. The Board explained that it was Claimant's burden to prove that the work injury was disabling and the duration of the disability. Claimant did not prove that her contusions disabled her for a period in excess of seven days because the WCJ credited Dr. Noble's testimony on the duration of her disability.

The WCJ found that the Orthopedic Institute released Claimant to full-duty work on October 21, 2022, but the actual date was November 21, 2022. The Board found the date of Claimant's release irrelevant. Because Dr. Lippe did not see Claimant until January 6, 2023, he could not testify whether Claimant was able to work before November 21, 2022. On the other hand, Dr. Noble opined that Claimant should have been able to work with restrictions four days after her work injury.

The Board concluded that the WCJ issued a reasoned decision. The WCJ explained the basis for his credibility determinations as well as the rationale

7

behind his findings. The WCJ's findings and credibility determinations are supported by the record as a whole.

Claimant petitioned for this Court's review.

## Appeal

On appeal,[1] Claimant raises two issues. First, Claimant argues that the WCJ's findings of fact were not supported by substantial evidence. Second, Claimant argues that the WCJ made factual errors that render his decision not a reasoned one, as required by the Act. *See* Section 422(a) of the Act, 77 P.S. §834.

## Applicable Law

The claimant must prove all elements necessary to support an award of compensation benefits. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 634 A.2d 592, 595 (Pa. 1993). The claimant must prove that she sustained a work injury that resulted in disability, *i.e.*, a loss of earning power. *Fotta v. Workmen's Compensation Appeal Board (U.S. Steel/USX Corporation Maple Creek Mine)*, 626 A.2d 1144, 1146 (Pa. 1993). Unless the causal connection between an injury and disability is obvious, unequivocal medical evidence is needed to establish that connection. *Id*.

The WCJ is the ultimate factfinder and "has complete authority over questions of witness credibility and evidentiary weight." *Verizon Pennsylvania Inc. v. Workers' Compensation Appeal Board (Mills)*, 116 A.3d 1157, 1162 (Pa. Cmwlth. 2015). The WCJ is "entitled to accept or reject the testimony of any witness, including a medical witness, in whole or in part." *Ausburn v. Workers'*

---

[1] This Court's review of a workers' compensation adjudication determines whether an error of law or a constitutional violation was committed or whether the findings of fact are supported by substantial, competent evidence. *Myers v. Workers' Compensation Appeal Board (University of Pennsylvania and Alexsis, Inc.)*, 782 A.2d 1108, 1110 n.1 (Pa. Cmwlth. 2001).

8

*Compensation Appeal Board (Merrell & Garaguso)*, 698 A.2d 1356, 1358 (Pa. Cmwlth. 1997). On appeal, this Court "is not to reweigh the evidence or to review the credibility of the witnesses." *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 612 A.2d 434, 437 (Pa. 1992). Rather, this Court may overturn a credibility determination "only if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of facts, or so otherwise flawed, as to render it irrational." *Casne v. Workers' Compensation Appeal Board (STAT Couriers, Inc.*), 962 A.2d 14, 19 (Pa. Cmwlth. 2008).

With this background, we address Claimant's arguments seriately.[2]

## I. Substantial Evidence:

In her first issue, Claimant argues that the WCJ's Finding of Fact No. 5(i) is not supported by substantial evidence because it erroneously "suggests" that Claimant was released to full-duty work as of October 21, 2022.[3] In actuality, the medical note of October 20, 2022, removed her from work. She was released back to full duty as of November 21, 2022. Further, Dr. Noble's IME report stated that Claimant was restricted from working by a provider at the Orthopedic Institute from

---

[2] In its brief, Employer requests that the Court dismiss Claimant's appeal because she did not comply with the Pennsylvania Rules of Appellate Procedure concerning briefs and reproduced records. Specifically, Claimant did not file a designation of contents of the reproduced record, as required by Pa.R.A.P. 2154. Claimant did not timely file her brief and the reproduced record. Pa.R.A.P. 2188. Claimant also did not number the pages of the reproduced record in accordance with Pa.R.A.P. 2173. We exercise our discretion to decline the request.

[3] Substantial evidence is such relevant evidence as a reasonable mind might accept to support a finding of fact. *Berardelli v. Workmen's Compensation Appeal Board (Bureau of Personnel State Workmen's Insurance Fund)*, 578 A.2d 1016, 1018 (Pa. Cmwlth. 1990). In evaluating a substantial evidence challenge, the appellate court does not reweigh the evidence or review credibility determinations. *Bethenergy Mines*, 612 A.2d at 437. Further, the court "must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced [from the evidence]." *Wagner v. Workers' Compensation Appeal Board (Anthony Wagner Auto Repairs & Sales, Inc.)*, 45 A.3d 461, 465 n.5 (Pa. Cmwlth. 2012).

October 4, 2022, through October 18, 2022, and then again from October 20, 2022, to November 21, 2022. Claimant contends the error on the date Claimant was released to work by the Orthopedic Institute requires a reversal of the WCJ's Decision.

Employer responds that the WCJ offered numerous reasons for his decision not to credit Dr. Lippe's testimony that Claimant was unable to work as of January 6, 2023. Any misstatement by the WCJ about Dr. Lippe's testimony does not provide a basis to reverse the WCJ's decision.

> Dr. Lippe testified:
>
> [Attorney:] I do want to ask you about [Orthopedic Institute's] excuse slip. The one on October 4th indicates that, quote, She can return to work October 18th, 2022. Do you see that and will you agree with their assessment at that time?
>
> [Dr. Lippe:] I don't have that -- oh, there it is. So I don't think I can agree or disagree. I mean, I didn't see her. I didn't come to a conclusion. That's something that somebody else did.
>
> [Attorney:] Would you agree, however, that that is what your office – office's note say, She can return to work on October 18th, 2022?
>
> [Dr. Lippe:] Yes.
>
> . . . .
>
> [Attorney:] Okay. Can you confirm with me, and I'm not asking you to verify this, because you did not see her for a couple months after that, but can you confirm with me that the excuse slip from October 20, 2022, says, quote, She can return to full duty on November 21st, 2022?
>
> [Lippe:] It does say that.

Lippe Dep. at 16-19.

Finding of Fact No. 5(i) states as follows:

10

When the doctor reviewed the notes of other providers within his practice who had evaluated Claimant since October 2022, the doctor generally agreed that their findings were essentially objectively normal. [] The doctor further agreed that a note from his practice from October 2022 indicated that Claimant could return to work on October 18, 2022. [] *He also confirmed that a note from his practice dated October 20, 2022, indicated that Claimant could return to work full duty October 21, 2022.* [] The doctor agreed that a part of the reason he gave Claimant an out of work note in January 2023 was because Claimant's son had asked for this on behalf of Claimant. [] The doctor asserted that had he not thought it appropriate to take Claimant out of work at that time, he would not have done so. []

WCJ Decision at 6, Finding of Fact No. 5(i) (internal citations omitted) (emphasis added). Claimant is correct that the WCJ misstated Dr. Lippe's testimony about the dates he saw in the medical records. Dr. Lippe testified that the medical records reported that she could work full duty on November 21, 2022, not October 21, 2022.

However, the WCJ's mistake about the medical notes is, at most, harmless error. Dr. Lippe's testimony about the "excuse notes" from the Orthopedic Institute did not establish that Claimant had been taken out of work for any specific period of time. The first note stated Claimant could "return to work on October 18, 2022[.]" Lippe Dep. at 17. The second note stated that Claimant could return to full duty on November 21, 2022. Read together, the notes might be understood that Claimant could not work full duty from October 21, 2022, to November 21, 2022. Neither note was entered into the record. An error is harmless if it "is not necessary to the adjudication." *Monaghan v. Board of School Directors of Reading School District*, 618 A.2d 1239, 1243 (Pa. Cmwlth. 1992). The WCJ's erroneous summary of Dr. Lippe's testimony meets this standard because it was not necessary to the adjudication. It was Dr. Noble's testimony that Claimant's work-related contusions required her to be off no more than four days that was dispositive.

11

We reject Claimant's substantial evidence argument. The WCJ's finding on the duration of Claimant's disability is supported by substantial evidence.

## II. Reasoned Decision

In her second issue, Claimant argues that the WCJ did not issue a reasoned decision because the factual error in Finding of Fact No. 5(i) tainted the WCJ's determinations on the credibility of Claimant and Dr. Lippe. The WCJ was mistaken in finding that no provider had taken Claimant out of work prior to her January 6, 2023, visit with Dr. Lippe.

Employer counters that the WCJ provided numerous reasons for his finding that Claimant's testimony was not credible with regard to the nature and extent of her work injury and disability. The WCJ based his credibility determination on his observations of "Claimant and her demeanor when she testified by video on several occasions in this dispute." Employer Brief at 16 (quoting WCJ Decision, Finding of Fact No. 7(a)). The WCJ's credibility determination was consistent with the testimony of Claimant's expert, who found no objective data to support her subjective complaints.

Section 422(a) of the Act requires the WCJ to issue a reasoned decision "containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached." 77 P.S. §834. "The [WCJ] shall specify the evidence upon which the [WCJ] relies and state the reasons for accepting it in conformity with this section." *Id.* A decision is reasoned for purposes of Section 422(a) if it allows for adequate appellate review. *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1052 (Pa. 2003).

12

The Supreme Court has explained that unless a credibility assessment is tied to a witness's demeanor before the WCJ, "*some articulation of the actual objective basis* for the credibility determination must be offered for the decision to be a 'reasoned' one which facilitates effective appellate review." *Daniels*, 828 A.2d at 1053 (emphasis added). "However, the WCJ's prerogative to determine the credibility of witnesses and the weight to be accorded evidence has not been diminished" by the reasoned decision requirements of Section 422(a) of the Act. *Green v. Workers' Compensation Appeal Board (US Airways)*, 155 A.3d 140, 147 (Pa. Cmwlth. 2017) (quoting *PEC Contracting Engineers v. Workers' Compensation Appeal Board (Hutchison)*, 717 A.2d 1086, 1089 (Pa. Cmwlth. 1998)). "Such determinations are binding on appeal unless made arbitrarily and capriciously." *Id.*

Here, the WCJ summarized the testimony of each witness and explained his credibility determinations. These explanations allow for a meaningful appellate review. Simply, the WCJ credited the testimony of Dr. Noble and his opinion that there was no reason for Claimant to be off work beyond four days after the incident.

This Court has held that where a WCJ provides several reasons for rejecting a witness's testimony and one of those reasons is erroneous, the other reasons may render the error harmless. *Zito v. Workers' Compensation Appeal Board (Northeastern Pennsylvania Health Alliance)* (Pa. Cmwlth., No. 138 C.D. 2017, filed September 14, 2017) (unreported), slip op. at 16.[4] The WCJ offered several reasons for not crediting Dr. Lippe's opinion, including the fact that Dr. Lippe was unable to find any objective evidence to support Claimant's subjective complaints.

---

[4] An unreported memorandum opinion of this Court may be cited for its "persuasive value, but not as a binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

13

In addition, the WCJ noted that Dr. Lippe had conceded that other physicians in his practice, who saw Claimant prior to his January 6, 2023, examination, had released Claimant to return to work. The WCJ further noted that Dr. Lippe had no explanation for Claimant's disproportionate reaction to his palpation, given her limited injuries. All of these reasons support the WCJ's decision not to credit Dr. Lippe's opinion that Claimant continued to be disabled by her work injury.

We reject Claimant's argument that the WCJ's decision is not reasoned.

## Conclusion

It was Claimant's burden to show that she was unable to work because of the work injury. Notwithstanding the WCJ's error in summarizing Dr. Lippe's testimony, the credited testimony of Dr. Noble established that Claimant was able to return to work four days after sustaining her work-related contusion injury. Accordingly, we affirm the Board's adjudication.

_____
MARY HANNAH LEAVITT, President Judge Emerita

Judge Fizzano Cannon did not participate in the decision in this case.

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Khalda Bibi, :
   Petitioner :
      :
      :
 v. : No. 1157 C.D. 2024
      :
Ross Dress For Less, Inc. :
(Workers' Compensation Appeal :
Board), :
   Respondent :

# **O R D E R**

AND NOW, this 16th day of July, 2025, the adjudication of the Workers' Compensation Appeal Board, dated August 5, 2024, is AFFIRMED.

MARY HANNAH LEAVITT, President Judge Emerita